Slip Op. 19-152

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **CANADIAN SOLAR INTERNATIONAL LIMITED ET AL.,** | |
| **Plaintiffs and Consolidated Plaintiffs,** | |
| **and** | |
| **SHANGHAI BYD CO., LTD. ET AL.,** | |
| **Plaintiff-Intervenors and Consolidated Plaintiff-Intervenors,** | **Before: Claire R. Kelly, Judge** |
| **v.** | **Consol. Court No. 17-00173** |
| **UNITED STATES,** | |
| **Defendant,** | |
| **and** | |
| **SOLARWORLD AMERICAS, INC. ET AL.,** | |
| **Defendant-Intervenor and Consolidated Defendant-Intervenors.** | |

## OPINION AND ORDER

[Sustaining in part and remanding in part the U.S. Department of Commerce's remand redetermination in the third administrative review of the antidumping duty order covering crystalline silicone photovoltaic cells, whether or not assembled into modules, from the People's Republic of China.]

Dated: December 3, 2019

Craig Anderson Lewis, Jonathan Thomas Stoel, and Michael G. Jacobson, Hogan Lovells US LLP, of Washington, DC, for Canadian Solar International Limited; Canadian Solar Manufacturing (Changshu), Inc.; Canadian Solar Manufacturing (Luoyang), Inc.; CSI Solar Power (China) Inc.; CSI-GCL Solar Manufacturing (YanCheng) Co., Ltd.; CSI Cells Co., Ltd.; and Canadian Solar (USA) Inc.

Adams Chi-Peng Lee, Harris Bricken McVay Sliwoski, LLP, of Seattle, Washington, for Ningbo Qixin Solar Electrical Appliance Co., Ltd.

Jonathan M. Freed, Robert George Gosselink, and Jarrod Mark Goldfeder, Trade Pacific, PLLC, of Washington, DC, for Changzhou Trina Solar Energy Co., Ltd.; Trina Solar (Changzhou) Science & Technology Co., Ltd.; Yancheng Trina Solar Energy Technology Co., Ltd.; Changzhou Trina Solar Yabang Energy Co., Ltd.; Turpan Trina Solar Energy Co., Ltd.; Hubei Trina Solar Energy Co., Ltd.; and Trina Solar (U.S.) Inc.

Timothy C. Brightbill, Laura El-Sabaawi and Usha Neelakantan, Wiley Rein, LLP, of Washington, DC, for SolarWorld Americas, Inc.

Neil R. Ellis, Richard L.A. Weiner, Rajib Pal, Shawn M. Higgins, and Justin R. Becker, Sidley Austin, LLP, of Washington, DC, for Yingli Green Energy Holding, Co., Ltd.; Baoding Tianwei Yingli New Energy Resources Co., Ltd.; Tianjin Yingli New Energy Resources Co., Ltd.; Baoding Jiasheng Photovoltaic Technology Co., Ltd.; Beijing Tianneng Yingli New Energy Resources Co., Ltd.; Hainan Yingli New Energy Resources Co., Ltd.; Shenzhen Yingli New Energy Resources Co., Ltd.; Yingli Green Energy International Trading Co., Ltd.; Yingli Green Energy Americas, Inc.; and Yingli Energy (China) Co., Ltd.

Joshua Ethan Kurland, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC. With him on the brief were Joseph H. Hunt, Acting Assistant Attorney General, Jeanne E. Davidson, Director, and Reginald T. Blades, Jr., Assistant Director. Of counsel on the brief was Mercedes C. Morno, Attorney, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, DC.

Kelly, Judge:  Before the court for review is the U.S. Department of Commerce's ("Department" or "Commerce") remand redetermination filed pursuant to the court's order in Canadian Solar Int'l Ltd. v. United States, 43 CIT __, __, 378 F. Supp. 3d 1292, 1325 (2019) ("Canadian Solar I").  See also Results of Remand Redetermination Pursuant to Ct. Remand Order Confidential Version, July 15, 2019, ECF No. 110 ("Remand Results"). In Canadian Solar I, the court sustained in part and remanded in part Commerce's determination in the third administrative review of the antidumping duty ("ADD") order on crystalline silicon photovoltaic products, whether or not assembled into modules, from the

People's Republic of China ("the PRC").   See Crystalline Silicon Photovoltaic Cells,

Whether or Not Assembled Into Modules, From the People's Republic of China, 82 Fed.

Reg. 29,033 (Dep't Commerce June 27, 2017) (final results of [ADD] administrative

review and final determination of no shipments; 2014–2015) ("Final Results") and

accompanying Issues and Decision Memorandum for the Final Results of the 2014–2015

[ADD] Administrative Review of Crystalline Silicon Photovoltaic Cells, Whether or Not

Assembled into Modules, From [the PRC], A-570-979, (June 20, 2017), ECF No. 44-5

("Final Decision Memo").   Specifically, the court ordered Commerce to further explain or

reconsider its surrogate value selection for valuing respondents' module glass inputs.

Canadian Solar I, 43 CIT at __, 378 F. Supp. 3d at 1325.    The court also ordered

Commerce to reconsider its application of an adverse inference in calculating Canadian

Solar's[1] dumping rate.  Id.  Finally, the court ordered Commerce to reconsider its decision

to reject Ningbo Qixin Solar Electrical Appliance Co., Ltd.'s ("Qixin") separate rate

application.  Id.

On remand, Commerce valued respondents' module glass inputs using the

Bulgarian Harmonized Tariff Schedule ("HTS") subheading as opposed to the Thailand

HTS subheading.  Remand Results at 2, 11–13.  Commerce further explained its "use of

an adverse inference in selecting from the facts available to value factor of production [ ]

information that was not provided by certain unaffiliated suppliers."  Id. at 2; see also id.

---

[1] Plaintiffs Canadian Solar International Limited; Canadian Solar (USA), Inc.; Canadian Solar Manufacturing (Changshu), Inc.; Canadian Solar Manufacturing (Luoyang), Inc.; CSI Cells Co., Ltd.; CSI-GCL Solar Manufacturing (Yancheng) Co., Ltd.; and CSI Solar Power (China) Inc. are referred to, collectively, as "Canadian Solar."

at 15–23.  Finally, Commerce reopened the record and issued Qixin a supplemental questionnaire.  Id. at 2, 29–33; see also Letter USDOC to Sandler, Travis Pertaining to Ningbo Qixin Questionnaire, RPD 3, bar code 3829214-01 (May 2, 2019).  Commerce found Qixin ineligible due to Qixin's failure to "demonstrate that it made a shipment of [the] subject merchandise during the [period of review ("POR").]"  Remand Results at 2, 29–33.

For the reasons that follow, the court sustains Commerce's selection of surrogate values for module glass.  The court also sustains Commerce's rejection of Qixin's separate rate application.  The court remands Commerce's application of an adverse inference in calculating Canadian Solar's dumping rate for further explanation or reconsideration.

## BACKGROUND

This court presumes familiarity with the facts of this case, as set out in the previous opinion ordering remand to Commerce, and now recounts the facts relevant to the court's review of the Remand Results.  See Canadian Solar Int'l Ltd. v. United States, 43 CIT __, 378 F. Supp. 3d 1292.  On June 27, 2017, Commerce published its final determination pursuant to its third administrative review of the ADD order of crystalline silicone photovoltaic products, whether or not assembled into modules, from the PRC.  See generally Final Results.  Commerce, inter alia, "selected Thailand as the primary surrogate country for valuing the mandatory respondents' factors of production[.]" Canadian Solar I, 43 CIT at __, 378 F. Supp. 3d at 1298–1300; see generally Final

Decision Memo.  Commerce applied partial adverse facts available ("AFA")[2] in calculating

Canadian Solar's antidumping margin because a number of unaffiliated suppliers of

Canadian Solar's solar cells and solar modules sold in the United States failed to provide

sufficient factors of production ("FOP") information, and because Commerce found that

Canadian Solar could have, but did not, induce cooperation.  See Final Decision Memo

at 15–18; Remand Results at 8.    Finally, Commerce rejected Qixin's separate rate

application.  Canadian Solar I, 378 F. Supp. 3d at 1299.

Canadian Solar commenced an action pursuant to section 516A(a)(2)(B)(iii) of the

Tariff Act of 1930, as amended, 19 U.S.C. § 1516a(a)(2)(B)(iii) (2012).[3]  Summons, July

7, 2017, ECF No. 1; Compl., July 7, 2017, ECF No. 8.  This action was consolidated with

actions brought by Qixin, Shanghai BYD Co., Ltd., Changzhou Trina Solar Energy Co.,

Ltd. et al. ("Trina"),[4] SolarWorld Americas, Inc. ("SolarWorld"),[5] and Sunpreme Inc.  See

Order, Sept. 26, 2017, ECF No. 41.[6]  Plaintiffs, Consolidated Plaintiffs, and Plaintiff-

---

[2] Although section 776 of the Tariff Act of 1930, as amended 19 U.S.C. § 1677e(a)–(b) (2012) and 19 C.F.R. § 351.308(a)–(c) (2014) each separately provide for the use of facts otherwise available and the subsequent application of adverse inferences to those facts, parties sometimes use the shorthand "adverse facts available" or "AFA" to refer to its use of such facts otherwise available with an adverse inference.

[3] Further citations to the Tariff Act of 1930, as amended, are to the relevant provisions of Title 19 of the U.S. Code, 2012 edition.

[4] The following parties are plaintiffs in the action Changzhou Trina Solar Energy Co., Ltd. et al. v. United States, Ct. No. 17-00197, which has been consolidated with the present action: Changzhou Trina Solar Energy Co., Ltd.; Trina Solar (Changzhou) Science & Technology Co., Ltd.; Yancheng Trina Solar Energy Technology Co., Ltd.; Changzhou Trina Solar Yabang Energy Co., Ltd.; Turpan Trina Solar Energy Co., Ltd.; Hubei Trina Solar Energy Co., Ltd.; and Trina Solar (U.S.) Inc.

[5] SolarWorld is a Defendant-Intervenor in the present action, as well as each of the consolidated actions other than SolarWorld Americas, Inc. v. United States (Ct. No. 17-00200), in which it is the plaintiff.

Intervenors brought several motions for judgment on the agency record before this court pursuant to USCIT 56.2, challenging various aspects of Commerce's determination.

This court sustained Commerce's surrogate value selections for valuing respondents' aluminum frames, nitrogen, polysilicon ingots and blocks, and financial ratios; Commerce's decision to include reported quantities of zero in the surrogate value calculations; and Commerce's denial of an offset for Trina U.S.'s debt restructuring income. Canadian Solar I, 43 CIT at __, 378 F. Supp. 3d at 1325. The court held that Commerce's reliance on the tempered glass subheading to value respondents' module glass was supported by substantial evidence, but that Commerce failed to reasonably explain why Thai import data for tempered glass "was not distorted by a small quantity of unusually costly imports from Hong Kong." See Canadian Solar I, 43 CIT at __, 378 F. Supp. 3d at 1303–07; see also Remand Results at 6. Further, this court held that Commerce's decision to apply partial AFA against Canadian Solar was unreasonable and contrary to law. See Canadian Solar I, 43 CIT at __, 378 F. Supp. 3d at 1320–22. This court remanded to Commerce to reconsider its denial of Qixin's separate rate application. See id. at 1325.

---

[6] The court's September 26, 2017 order consolidated the following cases under the present action: Ningbo Qixin Solar Electrical Appliance Co., Ltd. v. United States, Ct. No. 17-00187; Shanghai BYD Co., Ltd. v. United States, Ct. No. 17-00193; Changzhou Trina Solar Energy Co., Ltd. et al. v. United States, Ct. No. 17-00197; SolarWorld Americas, Inc. v. United States, Ct. No. 17-00200; and Sunpreme Inc. v. United States, Ct. No. 17-00201. Order, Sept. 26, 2017, ECF No. 41. Sunpreme Inc.'s action was severed from the present consolidated case on March 8, 2018. See Order, Mar. 8, 2018, ECF No. 61 (severing Ct. No. 17-00201 from Consol. Ct. No. 17-00173).

On remand, Commerce first, under respectful protest,[7] valued respondents' module glass using Bulgarian import data.[8]   See Remand Results at 11.   Commerce based this decision on the fact that Bulgarian data satisfied the breadth of its surrogate value criteria, as well as the holding in SolarWorld Americas, Inc. v. United States, 42 CIT __, 320 F. Supp. 3d 1341 (2018) that use of this import data was reasonable.   See Remand Results 12–15.   These changes in Commerce's methodology on remand resulted in a revised rate for Trina and the separate rate respondents.   Id. at 4.   Second, Commerce further explained its reasoning in applying partial AFA against Canadian Solar.   See Remand Results at 15–29.   Third, pursuant to this court's order, Commerce also provided Qixin the opportunity to demonstrate that any of its entries during the POR qualified as a sale of subject merchandise.   See Remand Results at 29–33.   Qixin failed to provide any such information.   See Remand Results at 32.   Commerce thus found Qixin ineligible for a separate rate.   Id. at 33.   For reasons that follow, Commerce's decisions to use Bulgarian import data, and to find Qixin is ineligible for a separate rate, are sustained.   Commerce's decision to impose partial AFA on Canadian Solar is remanded to Commerce for further reconsideration.

---

[7] Commerce maintains "that the parties failed to place on the record sufficient evidence demonstrating that the Thai import data are aberrational[.]"   Remand Results at 12.   Commerce disagrees with this court's conclusion in Canadian Solar I, but nonetheless complies with its order. Remand Results at 2 n.5.

[8] In agreement with Trina's comments, Commerce valued both Trina's coated glass, and its tempered glass, using Bulgarian import data.   Remand Results at 13–15.

## JURISDICTION AND STANDARD OF REVIEW

This court has jurisdiction pursuant to 19 U.S.C. § 1516a(a)(2)(B)(iii) and 28 U.S.C. § 1581(c), which grant the court authority to review actions contesting the final determination in an investigation of an antidumping duty order.  The court will uphold Commerce's determination unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i).

## DISCUSSION

### I.  Surrogate Value Selection

Canadian Solar[9] requests that this court remand Commerce's decision to rely on Bulgarian import data to value module glass.  Cmts. of Pl. and Consol. Pls. [Canadian Solar] in Opp'n to [Remand Results] Confidential Version at 3, Aug. 14, 2019, ECF No. 117 ("Pl.'s & Consol. Pls.' Cmts.").[10]  Canadian Solar submits that it would have been "more accurate" for Commerce "to simply adjust the aggregate Thai import data…by removing Hong Kong import data that have been identified as aberrational."  Remand Results at 13; see also Pl.'s & Consol. Pls.' Cmts. at 3–7 ("…Commerce was presented with a demonstrably more accurate and methodologically appropriate alternative to the

---

[9] Consol. Pl. Shanghai BYD Co., Ltd. ("Shanghai BYD") filed separate comments incorporating by reference, and supporting, arguments raised by Canadian Solar.  See generally Cmts. Consol. Pl. [Shanghai BYD] Opp'n [Remand Results], Aug. 14, 2019, ECF No. 119.  This court addresses arguments raised by Shanghai BYD and Canadian Solar together.

[10] Defendant-Intervenor SolarWorld also challenges Commerce's decision to value Canadian Solar and Trina's module glass sales according to Bulgarian import data.  See [SolarWorld's] Cmts. [Remand Results] at 1–2, Aug. 14, 2019, ECF No. 116 ("SolarWorld's Cmts.").  SolarWorld Americas rests on arguments set forth in its initial briefs before the court.  See id. (citing to Resp. Br. of Def.-Int. [SolarWorld] Confidential Version at 22–29, July 31, 2018, ECF No. 72).  However, SolarWorld maintains that Commerce should continue to apply AFA against Canadian Solar. SolarWorld's Cmts. at 1.

Bulgarian data.")  Canadian Solar submits that such an adjustment is consistent with Commerce's established practice.  Pl.'s & Consol. Pls.' Cmts. at 3–7.  Defendant United States counters that Commerce's determination is reasonable. See Def.'s Reply to Cmts. on [Remand Results] Confidential Version at 6–10, Sept. 13, 2019, ECF No. 131 ("Def.'s Reply").

Commerce's decision to rely on Bulgarian import data is supported by substantial evidence.  Commerce decided to rely on Bulgarian import data because it "satis[fied] the breadth of Commerce's surrogate value criteria for specificity to the input being valued, tax-and duty-exclusivity, contemporaneity, representativeness of a broad market average, and public availability."  Remand Results at 14–15.  Indeed, Canadian Solar concedes that Bulgarian import data "is a potentially reasonable alternative to the distorted Thai data." Remand Results at 13; Pl.'s & Consol. Pls.' Cmts. at 3–4.  Canadian Solar essentially argues in favor of what it considers to be another reasonable alternative. See  Pl.'s & Consol. Pls.' Cmts. at 3–4; Remand Results at 13.[11]

Canadian Solar argues that Commerce should use disaggregated Thai data, because Commerce's established practice is to value all surrogate values, to the extent possible, within a single country.  See Pl.'s & Consol. Pls.' Cmts. at 4 (citing to 19 C.F.R.

_____

[11] Canadian Solar also cites Mittal Steel Galati S.A. v. United States, 31 CIT 1121, 502 F. Supp. 2d 1295, 1308 (2007) ("Mittal Steel") as instructing Commerce to defend its surrogate choices when the record suggests other, more accurate, data.  Pl.'s & Consol. Pls.' Cmts. at 4.  Canadian Solar's reading of that decision is inapposite to the present proceeding.  Mittal Steel held that Commerce must explain its decision to rely on data when it is confronted with a colorable claim that the data is aberrational.  See Mittal Steel, 31 CIT at 1135, 502 F. Supp. 2d at 1308.  Here, Commerce has exercised its discretion to choose between two reasonable alternatives, and there is no evidence on the record that the Bulgarian import data is aberrational.

§ 351.408(c)(2) (2014)).[12] Commerce's regulation states that, except for labor, "[Commerce] normally will value all [FOPs] in a single surrogate country." 19 C.F.R. § 351.408 (c)(2). The word "normally," indicates that there are instances where Commerce may deviate from this requirement. Commerce has discretion to decide when to deviate from the normal methodology, so long as Commerce does not exceed the bounds of its statutory mandate. Commerce is deviating from using a source from a primary surrogate country because the Hong Kong import data renders the Thai import data unreliable as a whole and Commerce has a policy of not disaggregating data. See Remand Results at 12–15. Commerce's policy is based on its desire to preserve representativeness. See Remand Results at 14. Additionally, Canadian Solar has not offered any evidence that Bulgarian import data is aberrational or otherwise unreliable. Thus, Commerce choice of Bulgarian data is reasonable on this record.

## II. Use of an Adverse Inference

On remand, Commerce explained its application of facts otherwise available to Canadian Solar and its incorporation of an adverse inference in calculating Canadian Solar's margin. See Remand Results at 15–29. Commerce submits that under 19 U.S.C. § 1677e(a) it may consider an adverse inference against a non-cooperative party when choosing facts available for a cooperative respondent "in certain circumstances." Remand Results at 16–17 (discussing Mueller Comercial de Mexico S. De R.L. de C.V.

---

[12] 19 U.S.C. § 1677b(c) requires Commerce to value FOP in a nonmarket economy country based on the best available information. See 19 U.S.C. § 1677b(c). Commerce promulgated 19 C.F.R. § 351.408 (2014) and prescribed the special methodology for implementing 19 U.S.C. § 1677b(c). See generally 19 C.F.R. § 351.408 (2014). Further citations to Title 19 of the Code of Federal Regulations are to the 2014 edition.

v. United States, 753 F.3d 1227 (Fed. Cir. 2014)).  Commerce explains its use of adverse

gap fillers by relying upon policies of deterring non-cooperation and duty evasion.

Remand Results at 17–23.  For the reasons that follow Commerce's use of adverse

inferences in this case is both contrary to law and unsupported by substantial evidence.

      Where information necessary to calculate a respondent's dumping margin is not

available on the record, Commerce applies "facts otherwise available" in place of the

missing information.  See 19 U.S.C. § 1677e(a).  If Commerce "finds that an interested

party has failed to cooperate by not acting to the best of its ability to comply with a request

for information," Commerce may apply "an inference that is adverse to the interests of

that party in selecting among the facts otherwise available."  Id. § 1677e(b). However,

under certain circumstances, Commerce may incorporate an adverse inference under

§ 1677e(a) in calculating a cooperative respondent's margin, if doing so will yield an

accurate rate, promote cooperation, and thwart duty evasion.  Mueller, 753 F.3d at 1232–

36.  When analyzing the use of an adverse inference as a part of a § 1677e(a) analysis,[13]

the predominant concern must be accuracy.  Id. at 1233.

      Mueller requires Commerce to demonstrate that use of adverse facts under

§ 1677e(a) would lead to an accurate rate and is supported by the policy considerations

of avoiding non-cooperation and duty evasion.  In Mueller, cost data from one supplier

was missing from the record.  Mueller, 753 F.3d at 1230.  Commerce had data from

---

[13] As Commerce explains in its remand redetermination, here, Commerce did not draw an adverse inference against Canadian Solar.  Remand Results at 18.  Indeed, Commerce asserts it is "acting primarily under subsection (a)."  Remand Results at 19.  Commerce used facts otherwise available because Canadian Solar's unaffiliated suppliers, which Commerce determined to be interested parties, failed to respond to Commerce's requests for information, leaving an information gap in the record.  Remand Results at 19.

another supplier and chose the three least favorable transactions of that other supplier to replace the missing data. Id. at 1230–31. The Court of Appeals assessed the accuracy of the margin as a result of Commerce's selection of adverse facts, id. at 1232–33, and faulted Commerce for failing to explain why the larger data set would lead to a less accurate margin. Id. In Mueller there was no showing that the non-cooperative party would have known what data would be used in place of its data, especially since the data at issue was proprietary. Id. at 1233. Mueller specifically acknowledges that Commerce's rationale that an interested party would cooperate "if disclosing its actual costs to Commerce" were favorable, did not speak to the accuracy concern of § 1677e(a).

The Court of Appeals also considered Commerce's use of policy rationales to support the use of adverse facts—namely, deterring non-cooperation and thwarting duty evasion. Specifically, in Mueller, the Court of Appeals recognized that Mueller had an existing relationship with its supplier such that the potential threat of refusing to do business might induce compliance. Id. at 1235. The Court of Appeals did not elaborate on the nature of the relationship needed to support such a potential threat, however it noted that it would potentially be unfair to employ an adverse inference where the cooperating party had no control over the non-cooperating supplier. Id. Further, the Court of Appeals considered the risk of duty evasion. In Mueller the missing data was that of a producer and mandatory respondent, id. at 1229, which would effectively be able to avoid its own higher rate if it were able to sell goods through Mueller. Id. at 1235. The Court of Appeals did not decide whether Commerce's reliance on the policies of inducement and avoidance of duty evasion was reasonable, but held that the statute did not preclude

Commerce's consideration of those rationales so long as doing so was reasonable, in light of accuracy concerns, and took into account whether Commerce's choice might ultimately discourage cooperation.  Mueller, 753 F.3d  at 1236.

The accuracy analysis required by Mueller is missing here. In applying facts otherwise available against Canadian Solar, Commerce considered adverse inferences against Canadian Solar's unaffiliated suppliers who were themselves interested parties. Remand Results at 19.   Although Commerce addresses accuracy by stating that it only applies the adverse inference for the missing data, Remand Results at 23, it has not addressed the accuracy concerns specifically identified by Mueller, namely whether the data that Commerce applies promotes accuracy.  See Mueller, 753 F.3d at 1232–34. Commerce fails to adequately address the overarching concern of accuracy and therefore its redetermination is contrary to law.  See Remand Results at 15–29 (focusing its discussion on duty evasion and deterrence but not accuracy).  As in Mueller, Commerce fails to explain why the alternative—here, using an average of reported usage rates— would not better promote accuracy.  See Mueller, 753 F.3d at 1232–33.  Commerce must explain how its subsection (a) analysis furthers the predominant interest of calculating an accurate rate for Canadian Solar.  See 19 U.S.C. § 1677e(a); see Mueller, 753 F.3d at 1233.

Further, Commerce's view that the policy considerations of duty evasion and deterrence support the use of the adverse information in calculating the facts available rate is unsupported by this record. Commerce relies upon Canadian Solar's market presence, continued growth, and supplier-specific accounts, to substantiate its claim that

Canadian Solar could have induced its suppliers' cooperation.  Remand Results at 21.

As this court held in Canadian Solar I, "[s]uch facts do not reasonably indicate the

presence of a long-term relationship creating leverage."  43 CIT at __, 378 F. Supp. 3d at

1320.   Defendant correctly argues that Mueller speaks of "potentially refusing to do

business" in order to "potentially induce" cooperation.  See Def.'s Reply at 12–13; see

also Mueller, 753 F.3d at 1235.  However, in the same paragraph, the Court of Appeals

states that it would be potentially unfair to incorporate an adverse inference where a

cooperating party had no control over a non-cooperating party.  Mueller, 753 F.3d at 1235.

Further, Commerce has not pointed to any evidence demonstrating a threat of duty

evasion.  In Mueller, although the Court of Appeals did not opine on the reasonableness

of a finding of duty evasion, a threat of duty evasion arguably existed because the

uncooperative supplier was a mandatory respondent in the proceeding.  Mueller, 753 F.3d

at 1229, 1235.  Thus, the supplier arguably had an incentive to evade its AFA rate by

exporting its goods through Mueller.  Id. at 1235. Commerce points to no record evidence

to support a finding that such an incentive existed here.  Here, Commerce argues that

Canadian Solar's suppliers "clearly" have an interest in selling to Canadian Solar because

they have done so in this review.   See Remand Results at 27. Commerce then

extrapolates from that an interest in Canadian Solar paying lower dumping rates so that

their products are more attractive to U.S. importers.  See id. at 27–28.  Commerce's

argument proves too much.  If all that is required is an interest in selling, it is unclear when

Commerce would find an uncooperative supplier as not incentivized to evade duties.

Evidence of a potential stake in the respondent having a lower dumping margin does not

demonstrate a threat of duty evasion here.  Thus, Commerce's determination that the

policy rationales of inducement and thwarting duty evasion warrant the use of an adverse

inference in selecting among facts available for a cooperating respondent is not supported

by substantial evidence.

### III. Qixin's Separate Rate Eligibility

The Department reopened the record to provide Qixin an opportunity to

demonstrate that "any entry it may have made during the review period qualified as a sale

of subject merchandise."  Remand Results at 31.  Qixin failed to provide the requested

information.  Id.[14]  Thus, Commerce continues to find that Qixin is ineligible for a separate

rate.  Id. at 33.

It is the respondents' burden to populate the record with all relevant information.

See QVD Food Co. v. United States, 658 F.3d 1318, 1324 (Fed. Cir. 2011).  Qixin failed

to provide Commerce with the information it requested.  Further, no party challenges

Commerce's redetermination on this matter.  Thus, Commerce's finding that Qixin is not

eligible for a separate rate is sustained.

### CONCLUSION

The court sustains Commerce's selection of surrogate market values for module

glass as well as its rejection of Qixin's separate rate application.  Commerce remands for

---

[14] Qixin responded that it was unable to obtain the requested information and that all information
was in the possession of the United States government.  Resp. from Sandler, Travis & Rosenberg,
P.A. to Sec. of Commerce Pertaining to Ningbo Qixin Suppl. Questionnaire at 1, RPD 5, bar code
3831452-01 (May 9, 2019).

further explanation or reconsideration its application of an adverse inference in selecting facts available in calculating Canadian Solar's rate.

For the foregoing reasons, it is

**ORDERED** that Commerce's remand redetermination is remanded for further consideration consistent with this opinion; and it is further

**ORDERED** that Commerce shall file its third remand redetermination with the court within 60 days of this date; and it is further

**ORDERED** that the parties shall have 30 days thereafter to file comments on the third remand redetermination; and it is further

**ORDERED** that the parties shall have 15 days to file their replies to comments on the third remand redetermination.


   /s/ Claire R. Kelly  
   Claire R. Kelly, Judge

Dated: December 3, 2019
      New York, New York